## Stan Gokey v. Donald Bessette and Gail Bessette

[580 A.2d 488]

No. 88-068

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed July 13, 1990

*Saxer, Anderson, Wolinsky & Sunshine,* Richmond, for Plaintiff-Appellant.

*Harley G. Brown III,* Richmond, for Defendants-Appellees.

**Gibson, J.** Plaintiff landlord, who brought an action for unpaid rent, appeals from a district court decision denying relief and awarding defendant tenants damages and attorney's fees for breach of an implied warranty of habitability and retaliatory eviction. We affirm in part and reverse in part.

## I.

The parties entered into an oral agreement for the rental of a mobile home starting in September of 1985 at a monthly rent of $400. The tenants paid for electric service to the mobile home, but the landlord paid for the electricity for a nearby barn, in which the tenants were allowed to store their freezer.

The trial court found that during the tenancy a variety of problems developed, including water leakage into the home through the roof, which was fixed by the tenants, power failures due to a faulty transformer, and a furnace breakdown. More serious was a break in the sewer line serving the premises, which remained unresolved from February to June of 1986 and resulted in water surfacing from the system. The trial court found that the "landlord's response [fell] short of an adequate response. Foul odor filled the trailer and unhealthy fluids lay underneath the trailer for long periods of time." Defendants stopped paying rent as of June 1, 1986. The court found that final repair to the septic system came later in June, 1986, only after a visit from the town health officer, prompted by defendants. On June 6, 1986, prior to the repair, plaintiff gave notice to quit, effective August 1, 1986. The court found that after defendants stopped paying rent, plaintiff locked the barn where the freezer was located and shut off the power, causing the loss of $300 worth of food. Defendants vacated the premises on October 31, 1986, approximately one month after the plaintiff had sold the mobile home.

Plaintiff thereafter sued for unpaid rent, and defendants counterclaimed for damages, alleging violations of plaintiff's duty to provide habitable premises. The court concluded that because of the failure to correct the sewage problem and other continuing defects, plaintiff had violated his warranty of habitability, validating defendants' claim to return of the rent paid

for the period from February to June, 1986, some $1,600. In addition, the court awarded defendants $300 for the loss of the freezer food, $800 for the "discomfort and distress for the lockout of the barn for the months June to October, 1986," $1,600 for the retaliatory eviction under 9 V.S.A. § 4465,[1] and $700 in attorney's fees, for a total of $5,000. Plaintiff contends that the total award was actually $6,600, since the $5,000 total does not include the forgiveness of rent due for June through September, 1986, resulting from dismissal of plaintiff's complaint. The present appeal followed.

## II.

Plaintiff argues first that the trial court erred in concluding that the eviction was retaliatory simply because it followed defendants' complaints to the town health officer about the sewage problems. He maintains that he effected the repairs promptly and that they were approved by the town health officer. The eviction, he argues, was the result of nonpayment of rent.

Defendants do not deny that the timing of the complaint to the health officer and of the eviction notice were central to the court's decision on retaliatory eviction, but they respond that the events, taken as a whole, amply support the court's conclusion that the eviction was in retaliation for notification of the health officer. We agree. The trial court found that plaintiff had failed to comply with his duty to provide a habitable dwelling. Consequently, the withholding of the rent, which occurred after four months of inaction by plaintiff and prior to the repair, was allowable under our holding in *Hilder v. St. Peter*, 144 Vt. 150, 162, 478 A.2d 202, 209–10 (1984), and under 9 V.S.A. § 4458(a)(1). Plaintiff's argument that eviction was for the non-

---

[1] 9 V.S.A. § 4465 states in relevant part:

(a) A landlord of a residential dwelling unit may not retaliate by establishing or changing terms of a rental agreement or by bringing or threatening to bring an action against a tenant who:

(1) has complained to a governmental agency charged with responsibility for enforcement of a building, housing or health regulation of a violation applicable to the premises materially affecting health and safety.

payment of rent would appertain only if the trier of fact had concluded that there had been no breach of the landlord's duties. Cf. *Vold v. Marathon Oil Co.*, 407 F. Supp. 1011, 1018–19 (W.D. Ky. 1975) (action of landlord in insisting on minimum monthly rental payments on quarterly basis not contrary to statutory purpose, and later filing of forcible detainer was not retaliatory). The trial court made detailed findings to the contrary, however; absent a showing that these findings were not supported by credible evidence or that the trial court abused its discretion in concluding that the landlord had violated his statutory and contractual obligations to defendants, these findings must stand. *Gallagher v. McCarthy*, 148 Vt. 258, 263, 532 A.2d 557, 559–60 (1987).

██ Given the findings that plaintiff had failed to perform his obligations to defendants and that defendants were justified in withholding their rent payments, the trial court could reasonably conclude that the eviction was retaliatory. See 9 V.S.A. § 4465(a)(2). In urging that he believed he had legal basis for the eviction—the nonpayment of rent—and, consequently, intended no retaliation, plaintiff argues for a subjective test for a retaliatory eviction. While animus or bad motive may properly be considered in evaluating what is "retaliatory," the statute does not contemplate use of a subjective test. A subjective test would effectively establish such a high burden of proof for tenants that the benefit the Legislature intended to confer would be an illusion. In determining what is and is not retaliatory, the events must speak for themselves. See *Smith v. D.C. Rental Accommodations Comm'n*, 411 A.2d 612, 616 n.7 (D.C. 1980) (upon learning that tenant complained to housing inspector, landlord's immediate response—"I want your apartment by August first"—was sufficient to support allegations of retaliatory eviction); *Spencer v. Blackmon*, 22 Ohio Misc. 2d 52, 53, 490 N.E.2d 943, 945 (Mun. Ct. 1985) (landlord's attempt to evict tenant for failure to provide passkey for lock installed by tenant was retaliatory as a matter of law).

██ In the present case, the eviction action against defendants followed a long course of disagreements over the con-

dition of the rental premises, generated by plaintiff's failure to provide habitable premises. See *Hilder v. St. Peter*, 144 Vt. at 159, 478 A.2d at 208. There was ample evidence to support the trial court's conclusion that the eviction action and the closure of access to the barn—which constituted "changing terms of a rental agreement" within the meaning of 9 V.S.A. § 4465(a)— were retaliatory. If plaintiff simply wished to recover the rent he believed due him, and which defendants had withheld after June 1, 1986, he could have limited his action to that claim. It is not the purpose of § 4465 to bar a landlord from bringing a good-faith action to recover unpaid rent. Plaintiff, however, having failed to provide habitable premises and having conceded that significant corrective action was eventually required, should not be surprised that the court would construe as retaliatory his attempt to oust his tenants after four months of contention over the condition of the premises.

## III.

Plaintiff next argues that since he repaired the sewer system within a reasonable time, the court erred in awarding damages for breach of the implied warranty of habitability. In essence, plaintiff argues that he fixed the premises within a reasonable time after notice. The trial court found otherwise based on ample evidence to support its finding that, due to the septic system failure, the want of proper heating, and a leaky roof, plaintiff had failed to maintain habitable premises.

## IV.

Plaintiff also asserts that the damages awarded by the trial court were not supported by the evidence or the law. His principal argument is that the trial court awarded $1,600 twice, once for the "discomfort of living in an unsanitary dwelling from February to June, 1986," and a second time "for the stress and discomfort of having to endure the frustration of a retaliatory eviction." The heart of plaintiff's claim is that the emotional injury attributable to the failure to repair the sewer system and the emotional injury from the retaliatory eviction were, in effect, the same injury, and that "the tenants are not

entitled to this double recovery." Even though the amount of each recovery was the same ($1,600), the recovery was not double. The events giving rise to the emotional damage were not contemporaneous with, nor did they concern, the same occurrence. Defendants experienced the strain and suffering resulting from the unsanitary conditions from February to June, 1986. With or without a subsequent retaliatory eviction, that emotional injury was complete when the septic system was finally repaired on June 17, 1986. The retaliatory eviction followed the withholding of the June 1st rental payment and caused an entirely different injury—not the risk of illness from flowing sewage and an assault on the olfactory senses, but rather the injury of eviction from a dwelling which has finally been made habitable. The two injuries differed in time and nature.

## V.

Plaintiff is correct, however, that there was no basis on the record to deny his claim for rent from June 17 to September 30, 1986. Defendants remained on the premises during this period, after the sewer line repair had been completed. None of defendants' theories apply to this period of occupancy. The violation of the implied warranty of habitability was addressed by the forgiveness of rent for February, March, April, and May, 1986, and the court awarded damages for the retaliatory eviction, the loss of food, and the discomfort and distress associated with the lockout from the barn.

The court provided no rationale for denial of plaintiff's claim for rent from June 17 through September 30, and defendants do not suggest any rationale in their brief. Consequently, plaintiff is entitled as a matter of law to rent in the amount of $1,370.95 for this period.[2]

## VI.

Plaintiff next argues that the attorney's fee allowance of $700

---

[2] The rent for thirteen days in June amounts to $170.95 ($4,800 for 12 months divided by 365 days equals daily rental of $13.15, or $170.95 for 13 days). Adding $1,200 rent for the months of July, August and September brings the total rent for this period to $1,370.95.

was unsupported by any evidence on the record. The trial court concluded "from the file, the complexity of the factual and legal issues presented and the competence of counsel that his services equal at least $700." Plaintiff, however, offered no evidence as to the value of those services.

■ We have always required counsel to present evidence in support of any request for attorney's fees. See *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 605, 523 A.2d 1228, 1232 (1986); *Bruntaeger v. Zeller*, 147 Vt. 247, 254, 515 A.2d 123, 128 (1986). In doing so, we have also stated that a trial court may rely on its own experience and knowledge in making its determination. *Fine Foods, Inc.*, 147 Vt. at 605, 523 A.2d at 1232; *Young v. Northern Terminals, Inc.*, 132 Vt. 125, 130, 315 A.2d 469, 472 (1974). Without abrogating our longstanding practice in the usual case, we hold that when the fee requested is not large, it is within the discretion of the trial court to award a reasonable fee without requiring the submission of evidence. We make no attempt, however, to establish a dollar amount below which a trial court may dispense with the taking of evidence; that decision is one that must depend on the facts of the individual case.

■ ■ We believe this is one of those cases. The amount involved is not substantial for the complexity of the case, and we do not believe it would serve any useful purpose to remand this matter solely for the taking of evidence as to the reasonableness of the attorney's fee. Trial courts have wide discretion in fixing the reasonable value of legal services, and the fee allowed by the court will ordinarily not be disturbed unless there is "'strong evidence of excessiveness or inadequacy.'" *Parker, Lamb & Ankuda, P.C. v. Krupinsky*, 146 Vt. 304, 307, 503 A.2d 531, 533 (1985) (quoting *Young v. Northern Terminals, Inc.*, 132 Vt. at 130, 315 A.2d at 472). There is no claim that the fee awarded herein was excessive or unreasonable, and we find no abuse of discretion on the part of the trial court.

The total amount of defendants' award, including attorney's fees, comes to $5,000, and is thus within the $5,000 jurisdictional limit of the district court. See 4 V.S.A. § 437.

*The dismissal of that portion of plaintiff's complaint seeking recovery of rent from June 17 through September 30, 1986 is reversed, and plaintiff is awarded judgment in the amount of $1,370.95 on his complaint. The judgment of $5,000 in favor of defendants on their counterclaim is affirmed. Accordingly, defendants are awarded judgment in the net amount of $3,629.05.*