## Pamela Favreau v. Donald Miller

[591 A.2d 68]

No. 87-085

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed March 29, 1991

---

*William R. Marks*, Burlington, and *James M. Libby, Jr.*, Vermont Legal Aid, Inc., Montpelier, for Plaintiff-Appellant.

*Miller & Tonelli*, Randolph, for Defendant-Appellee.

**Morse, J.** Plaintiff brought suit to recover for her injuries after she fell down the stairs in the apartment she rented from the defendant in Burlington, Vermont. The jury found for defendant, and plaintiff appeals, claiming error in the jury instructions. We affirm.

In December 1983, plaintiff and a roommate rented the apartment—the second and third floors of a house—from defendant. Defendant lived on the first floor. The interior stairway in question led from the apartment's main living area on the second floor to a large bedroom on the third, an area that was formerly the attic. The stairway was steep, had no handrail, and headroom at the top was inadequate. Defendant knew of these problems, and the parties had discussed plans for renovations. Thereafter, on March 19, 1984, plaintiff fell down the stairs, dislocating her hip.

The court instructed the jury on the landlord's negligence as follows:

> First, you should understand that a landlord is not a guarantor of the safety of his tenants, nor is he liable for every injury that his tenants may suffer on the premises. He may be found liable, however, where personal injuries to tenants are caused by his negligence in caring for the property. The landlord is required to use reasonable care in the upkeep of his apartments and to keep them in reasonably safe condition for his tenants. Failure to use reasonable care in the upkeep of the property may be negligence, for which the landlord can be held liable if a tenant is injured.
>
> Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, when prompted by considerations which ordinarily regulate the

conduct of human affairs. It is, in other words, the failure to use ordinary care under the circumstances in the management of one's person or property. Ordinary care is that care which reasonably prudent persons exercise in the management of their own affairs in order to avoid injury to themselves or their property, or to the person or property of others.

As applied here to an apartment house, negligence means the lack of ordinary care in the upkeep of the property in order to avoid an unreasonable risk of injury to tenants.

A landlord is required to take reasonable steps to repair any dangerous condition for which he has had notice. He is also required to know of any dangerous condition of which, in the exercise of reasonable care, he would have learned about. He is not required to know of all conditions that become dangerous from time to time, absent lack of ordinary care in knowing the condition of his property. Where, of course, the landlord has acknowledged to the tenant the existence of a dangerous condition, you may consider that as evidence of notice.

Where a landlord has notice, or with due diligence should have known of a condition dangerous to the safety of tenants, he is required to use ordinary care to make the property safe. That is, he must take such reasonable steps as are necessary to take care of the problem within a reasonable time.

Some conditions are so serious that prompt measures are required to be taken. Others are not so serious and can await a convenient moment to get to them. What is reasonable will depend upon the circumstances of the particular case.

Therefore, the plaintiff must prove each of the following essential elements of her case by a preponderance of the evidence:

1. That the condition of the stairway under consideration was unreasonably dangerous;

2. That Donald Miller knew, or with the exercise of reasonable care should have known, that there was a dangerous condition with respect to the stairway leading to the third floor;

3. That he failed to take reasonable steps within a reasonable time to make them appropriately safe for the tenants;

4. That the unreasonable dangerous condition was the proximate cause of injuries to the plaintiff.

It might be well to define what we mean by the term "unreasonably dangerous." Something is unreasonably dangerous when it has a tendency to cause injury beyond the degree ordinarily to be expected by a reasonably prudent and knowledgeable user. A stairway is unreasonably dangerous when its likelihood of causing injury is beyond that ordinarily to be expected, and which should not be expected to be safely negotiated by the use of ordinary care.

There has been evidence introduced here concerning the Burlington Minimum Housing Code. The Code requires stairways in rental apartments to be kept in a safe condition. Those that are unsafe do not comply with the Code. It will be for you the jury to determine whether or not, on the evidence presented here, the stairway in question complied with the Code. If you find that it did not, then you may consider such fact as evidence that the stairs were unreasonably dangerous. If the defendant knew or should have known that the stairs were in violation of the Code, and he failed to take reasonable steps to bring them into compliance, you may consider such fact as evidence of negligence.

Old buildings often have been modified for uses different than what was originally intended. Apartments in old buildings often are not as convenient or as safe as in modern buildings. Where a tenant voluntarily rents an apartment with knowledge that it has a less than convenient stairway which requires some additional care to negotiate, the tenant cannot complain if he or she fails to use the care required to descend the stairs successfully.

Where the stairs are unreasonably dangerous, however, and cannot be negotiated safely with the ordinary care expected of one living in such an apartment, then the tenant is not held to have assumed the risk of injury that is caused by the unreasonably dangerous condition. It will be for you the jury to determine from the evidence whether the stairs here were unreasonably dangerous.

Plaintiff complains that the jury instructions were deficient in two general respects. First, over plaintiff's objection, the trial court refused to instruct the jury that landlord liability for personal injury could be based upon a breach of the implied warranty of habitability, regardless of the landlord's negligence. Second, plaintiff claims that the jury instructions on negligence were inadequate. Specifically, she argues that the court erred by permitting the jury to find that plaintiff assumed the risk of the defective stairway by renting an old apartment with knowledge of the stairway's condition. She claims further that the instructions misled the jury into believing that dangerous conditions that are "not so serious" do not require prompt repair by the landlord. Finally, plaintiff maintains that evidence of noncompliance with an applicable housing code establishes a prima facie case of negligence; the court instructed only that a violation of the housing code could be used by the jury as evidence of the landlord's negligence.

## I.

We note at the outset that the jury instructions in this case, requiring a landlord to exercise ordinary care in the upkeep of the rental property, represent a significant development in the common law of landlords and tenants, because landlords had been immune from liability for any injury to a tenant occurring in an area not within the landlord's possession and control. Thus, in *Smith v. Monmaney*, 127 Vt. 585, 588, 255 A.2d 674, 676 (1969), we wrote:

> The determinant issue in ascertaining responsibility for negligence [by a landlord], arising from a dangerous condition on the land, is possession and control of the area which gives rise to the injury. It is the landlord's duty to exercise reasonable care to maintain entrances and passageways retained in his control for the common use of tenants in multiple dwelling premises.

(Citations omitted.) See also *Waite v. Brown*, 132 Vt. 20, 25, 312 A.2d 915, 916 (1973) ("The parties agree that unless the porch and stairway were under the possession and control of the landlord there was no duty on the landlord to exercise reasonable care to maintain them."). As the stairs in the present case were

inside the apartment, leading from the living space on the second floor of the house to the bedroom on the third floor, the landlord would have enjoyed immunity under the old law.

■ The trial court here properly shunned the common-law categories. As stated in a leading treatise, "it is no part of the general law of negligence to exonerate a defendant simply because the condition attributable to his negligence has passed beyond his control before it causes injury . . . ." 2 F. Harper & F. James, The Law of Torts § 27.16, at 1509 (1956). The New Hampshire Supreme Court in 1973 called the rule of landlord tort immunity an anomaly, manifesting "untoward favoritism" to landlords. *Sargent v. Ross*, 113 N.H. 388, 391, 308 A.2d 528, 530 (1973). "We think that now is the time for the landlord's limited tort immunity to be relegated to the history books where it more properly belongs." *Id.* at 396, 308 A.2d at 533. We concur, and now hold that Vermont landlords too may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain "control" of the dangerous condition. See *id.* at 397, 308 A.2d at 534.

## II.

The parties agree that the trial court properly rejected the "possession and control" doctrine and that its more expansive theory of landlord liability was in general correct. Plaintiff, however, insists that the court did not go far enough, and should have told the jury that the landlord's liability may also be predicated on a breach of the warranty of habitability. This Court has recognized an implied warranty of habitability in residential leases, permitting recovery of contract remedies when the premises are substandard. *Hilder v. St. Peter*, 144 Vt. 150, 159–64, 478 A.2d 202, 208–11 (1984); see also 9 V.S.A. §§ 4457–4459 (statutory warranty of habitability). The question before us is whether the doctrine enunciated in *Hilder* and provided now by statute may be invoked to recover damages for personal injury on the rental property, that is, to recover under a contract theory for what traditionally has been encompassed under tort theory.

■ *Hilder*, following a national trend, see Restatement (Second) of Property, ch. 5, introductory note (1977), sought to recast the terms of landlord-tenant law.

Historically, relations between landlords and tenants have been defined by the law of property. Under these traditional common law property concepts, a lease was viewed as a conveyance of real property. The relationship between landlord and tenant was controlled by the doctrine of caveat lessee; that is, the tenant took possession of the demised premises irrespective of their state of disrepair. The landlord's only covenant was to deliver possession to the tenant. . . . The landlord was under no duty to render the premises habitable unless there was an express covenant to repair in the written lease.

144 Vt. at 157, 478 A.2d at 206–07 (citations omitted). *Hilder* discarded the antiquated concepts: "'The modern view favors a new approach which recognizes that a lease is essentially a contract between the landlord and the tenant wherein the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent for such habitable premises.'" *Id.* at 158–59, 478 A.2d at 208 (quoting *Boston Housing Authority v. Hemingway*, 363 Mass. 184, 198, 293 N.E.2d 831, 842 (1973)). We concluded that "in the rental of any residential dwelling unit an implied warranty exists in the lease, whether oral or written, that the landlord will deliver over and maintain, throughout the period of the tenancy, premises that are safe, clean and fit for human habitation." *Id.* at 159, 478 A.2d at 208. The tenant must only notify the landlord of the deficiency and allow a reasonable time for its correction. *Id.* at 161, 478 A.2d at 209.

In addition to standard contract damages as measured by the difference between warranted and actual rental value, *Hilder* allowed recovery "for a tenant's discomfort and annoyance arising from the landlord's breach of the implied warranty of habitability." *Id.* From this, plaintiff argues, it is a short step to permit recovery for a tenant's injuries arising from the landlord's breach.

■■ We believe, however, that in the adjudication of a lawsuit for relief from personal injury, the concepts of tort and negligence law provide the more straightforward way to describe the respective duties and liabilities of the parties. Where a tenant leases substandard premises, she ought recover from the

landlord 'her excess rental payments, her consequential damages for "annoyance and discomfort" and, in certain instances, punitive damages. *Id.* at 163, 478 A.2d at 210. The landlord broke a promise—at least one implied by the law—and the tenant has the right to recover her losses. But where the tenant seeks a damage award for her personal injuries, other questions arise: What caused the injuries? Were they the result of the landlord's breach? Did they flow from the tenant's own carelessness? The law of negligence is best suited to answer these questions and has developed rules for their accommodation. For example, under Vermont's comparative negligence statute, a plaintiff can recover only if her own negligence contributed to no more than half the cause of the accident, and even then only in proportion to the amount of negligence attributed to the defendant. 12 V.S.A. § 1036. If she was primarily to blame for her fall and injuries, she cannot recover. In essence, plaintiff is asking us to do away with these principles, for, in her view, all damages stemming from defendant's breach of the warranty would be recoverable. Fault would not enter the calculation. We believe it is unwise to abandon negligence principles in this context absent legislative direction.[1]

We therefore reject plaintiff's contention that the court erred by refusing to instruct the jury that they might find defendant liable for plaintiff's injuries without considering negligence. The question remains whether the court's charge on negligence was proper.

## III.

■■ In reviewing the adequacy of jury instructions, we look at "the charge as a whole rather than piecemeal." *State v. Valley*, 153 Vt. 380, 398, 571 A.2d 579, 588 (1989). "If as a whole the charge 'breathes the true spirit and doctrine of the law' and there is no fair ground to say the jury has been misled, there is

---

[1] In 1986, Vermont enacted legislation applicable to leases entered into or renewed after July 1, 1986, providing contract remedies to tenants renting substandard dwellings. 9 V.S.A. §§ 4457–4459. The statute, while allowing a tenant to recover damages if the landlord "fails to make repairs within a reasonable time and the noncompliance materially affects health and safety," § 4458(a), does not appear to contemplate an action for personal injury.

no error." *Id.* (quoting *State v. Norton,* 147 Vt. 223, 235, 514 A.2d 1053, 1061 (1986)). In our view, the court's instruction on negligence, viewed as a whole, states the law correctly.

Plaintiff contends that a landlord should not be absolved of liability because a tenant "assumes the risk." We agree. If an unreasonably dangerous condition exists in the apartment, the landlord must take reasonable steps to correct the condition whether or not the tenant rented the premises with knowledge of the condition. The tenant's conduct is measured by negligence standards, not on the doctrine of assumption of the risk. 12 V.S.A. § 1036. The jury charge here stated the correct principle clearly and repeatedly.

Plaintiff, however, insists that the final two paragraphs quoted from the charge contradict the general rule and introduce the concept of "assuming the risk." We disagree. The court sought to define the key terms in its charge. Thus, "[s]omething is unreasonably dangerous when it has a tendency to cause injury beyond the degree ordinarily to be expected by a reasonably prudent and knowledgeable user." What degree of danger is "ordinarily to be expected" of a stairway? This, of course, depends on the circumstances. Where the stairs, leading to an attic bedroom, are visibly steep and short of headroom, the reasonably careful user would expect to travel them in a somewhat different manner than she would the stairs to a hotel lobby. If they are not unreasonably dangerous—*even though* they are steep and wanting headroom—then the landlord cannot be liable for the tenant's injuries. Whether they are unreasonably dangerous is a question for the jury. The last paragraph of the quoted instructions states this principle. The jury was not given the impression that a tenant may assume the risk of *un*reasonably dangerous conditions.

The reference to old buildings is likewise an appropriate attempt to give content to the terms of art in the charge and flesh out for the jury its role. A jury might find a particular condition to be unreasonably dangerous in one circumstance, a brand new building, where it would not in another, an old house renovated for rental apartments. *Sargent v. Ross,* the leading New Hampshire case which plaintiff argues should have been followed more closely by the trial court here, states: "General principles of tort law ordinarily impose liability upon persons for injuries

caused by their failure to exercise reasonable care *under all the circumstances.*" 113 N.H. at 391, 308 A.2d at 530 (emphasis added). The age of the house is one of the circumstances. So is the fact that the stairs led to an attic bedroom.

We agree with plaintiff that the court's language—"Where a tenant voluntarily rents an apartment with knowledge that it has a less than convenient stairway which requires some additional care to negotiate, the tenant cannot complain if he or she fails to use the care required to descend the stairs successfully"—is unfortunate, but in the context of the overall charge it is not error. It is a transition from the charge on the landlord's liability to the charge on contributory negligence, which we have not quoted.[2] See *Sargent v. Ross*, 113 N.H. at 395, 308 A.2d at 533 ("The obviousness of the risk is primarily relevant to the basic issue of a plaintiff's contributory negligence."). The language merely begins to explain that the tenant's own negligence must be considered in the final account.

■ Plaintiff quibbles over the use of the term "unreasonably dangerous," arguing that the landlord has a duty to remedy all dangerous conditions. Any staircase, no matter how well designed, has inherent dangers, however, and a landlord is liable only for those that are unreasonably dangerous, as that term was defined in the court's charge.

■ Plaintiff also complains of language in the sixth paragraph of the charge, distinguishing serious conditions from ones "not so serious." We find no error. Here, the court sought to give content to the "reasonable steps" required of the landlord in the previous paragraph. A broken step, for example, should be repaired "promptly"; a design flaw in the stairway such as a low ceiling requires more time and planning to repair. The landlord is merely required, as the court instructed, to "take such reasonable steps as are necessary to take care of the problem within a reasonable time. . . . What is reasonable will depend upon the circumstances of the particular case."

---

[2] That portion of the charge is not in issue in this appeal. The jury never considered the tenant's own negligence because, on the verdict interrogatory form, the jury answered "no" to the first question: "Do you find that the defendant was negligent and that his negligence was a proximate cause of the plaintiff's injuries?"; it was not required to proceed further.

■ Finally, plaintiff contends that the court erred in its discussion of the import of evidence of a violation of applicable housing codes. Plaintiff wished the court to say that the jury should presume negligence once a violation was found, subject to defendant's rebuttal. The court instead told the jury that they may consider a code violation, if they found one, as evidence that the stairs were unreasonably dangerous. Under V.R.E. 301(c)(3), however, the court must not instruct the jury on the presumption of negligence ("existence of the presumed fact") when the defendant "has met his production burden" ("burden of producing evidence sufficient to support a finding that the presumed fact does not exist," V.R.E. 301(a)). The defendant here met his burden of production, and the court correctly instructed the jury by not making reference to the presumption, V.R.E. 301(c)(3).

*Affirmed.*

**Peck, J.,** concurring. I concur in the result only.

**Dooley, J.,** dissenting. I concur in the rejection of a warranty theory for personal injury damages. I would not decide whether to abolish the control test. We have not had the benefit of briefing and argument on that issue since the parties agreed that control was unnecessary and that is the law of this case. However, I believe that the jury instructions contain two substantial errors in the application of negligence standards to this case. Accordingly, I would reverse for a new trial.

The trial court instructed the jury that, in order to show negligence on the part of the landlord, the plaintiff must prove that "the condition of the stairway under consideration was unreasonably dangerous." The court stated that a "stairway is unreasonably dangerous when its likelihood of causing injury is beyond that ordinarily to be expected, and which should not be expected to be safely negotiated by the use of ordinary care." The court explained that when old buildings are modified and converted into apartments they may not be "as convenient or as safe" as more modern buildings. According to the court, when a tenant chooses to rent in these older buildings with the knowl-

edge that the building has a "less than convenient stairway which requires some *additional care* to negotiate, the tenant cannot complain if he or she fails to use the care required to descend the stairs successfully." (Emphasis added.) In such a case, in effect, the tenant "assumes the risk of injury" posed by the hazardous stairway.

As the majority states, we do not reverse for errors in a jury charge as long as it breathes the true spirit and doctrine of the law and there is no fair ground to say the jury was misled. It is, however, the duty of the court to charge fully and correctly upon every point indicated by the evidence. See *Nauceder v. Howard*, 127 Vt. 274, 278, 247 A.2d 76, 79 (1968). The charge here contains a confusing merger of negligence and contributory negligence concepts, including assumption of the risk. On top of the confusion, there are two significant deviations from well-established negligence law. Accordingly, there are more than fair grounds to believe that the jury could have been misled.

The first error was in charging that the age of a building was a factor which lowers the degree of care that a landlord must exercise. The charge states explicitly that apartments in old buildings do not have to be as safe as apartments in new buildings. The majority accepts this specific, unique emphasis on the age of the building as simply an application of the principle that reasonable care is determined in light of "all the circumstances," quoting *Sargent v. Ross*, 113 N.H. 388, 391, 308 A.2d 528, 530 (1973). The more relevant quote from *Sargent* comes later in the opinion: "A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." *Id.* at 397, 308 A.2d at 534. This statement of the law has been generally accepted. See *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 100 (D.C. Cir. 1972) ("A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk."); *Moloso v. State*, 644 P.2d 205, 219 (Alaska 1982) (landowner

must act as reasonable person in maintaining property "'in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk'") (quoting *Webb v. City & Borough of Sitka*, 561 P.2d 731 (Alaska 1977)); *Becker v. IRM Corp.*, 38 Cal. 3d 454, 468, 698 P.2d 116, 125, 213 Cal. Rptr. 213, 222 (1985) (en banc) (landlord "must act toward his tenant as a reasonable person under all of the circumstances, including the likelihood of injury, the probable seriousness of injury, [and] the burden of reducing or avoiding the risk"); *Stephens v. Stearns*, 106 Idaho 249, 258, 678 P.2d 41, 50 (1984) (quoting *Sargent*, 113 N.H. at 397, 308 A.2d at 534); *Young v. Garwacki*, 380 Mass. 162, 169, 402 N.E.2d 1045, 1049 (1980) (quoting *Sargent*); *Basso v. Miller*, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976) (quoting *Arbaugh's Restaurant*, 469 F.2d at 100).

When one considers the age of a building in relation to these basic factors, one can see that it can cut either way in specific cases. If the consequences of age increase the likelihood of injury to tenants and increase the likely seriousness of an injury, and these increased risks are not offset by an increase in the burden of avoiding the injury, then the landlord might have to take additional safety precautions in an older building. If, in another case, the increased risks are more than outweighed by the increased burdens, the landlord might not have to take as many safety precautions as in a newer building. In a case involving an older building, an instruction that age always reduces the landlord's responsibility with respect to safety is simply wrong and clearly prejudicial to the tenant.

Even if general principles of landlord and tenant law were not in conflict with the court's charge, I believe it cannot stand in light of the applicable housing code. The code requires premises to be safe, obviously establishing a standard of care. It does not provide that older buildings can be less safe or unsafe. Thus, the charge on the age of the building is in conflict with the charge on violation of the municipal housing code, and the jury had no way to reconcile the conflict.

The second major defect in the charge is acknowledged by the majority. In the part of the charge ostensibly defining defendant's standard of liability, the trial court added language

clearly stating that a tenant who "voluntarily rents an apartment" knowing it has a "less than convenient stairway" assumes the risk of injury if the tenant "fails to use the care required to descend the stairs successfully." I find two errors in this statement. It adds a "secondary" assumption of the risk defense, although we have held that assumption of the risk of this type is simply an aspect of contributory negligence. See *Sunday v. Stratton Corp.*, 136 Vt. 293, 304, 390 A.2d 398, 404 (1978). Accordingly, "use of assumption of risk language is irrelevant and confusing in a jury instruction on comparative negligence." *Id.*; see also *Perkins v. Windsor Hospital Corp.*, 142 Vt. 305, 310, 455 A.2d 810, 814 (1982) (use of assumption of risk language reversible error because "parties were entitled to a jury free from irrelevancies and possible confusion").

Further, this language directly undercuts the standard for landlord liability adopted by the trial court in this case. As one court stated in abandoning landlord immunity:

> The practical result of this archaic rule has been to discourage repairs of rented premises. . . . [A] landlord with knowledge of a defect has less incentive to repair it. And the tenant, who often has a short-term lease, limited funds, and limited experience dealing with such defects, will not be inclined to pay for expensive work on a place he will soon be leaving.

*Young v. Garwacki*, 380 Mass. at 168, 402 N.E.2d at 1049. The import of the trial court's charge is that a tenant who confronts an unsafe stairway in an old building must make it safe or use extraordinary care to negotiate it despite its unsafe condition. In essence, the language puts us back in the situation where the landlord has little, if any, liability because the tenant accepts the risk by renting the apartment. We directly rejected that theory in *Beck v. Dutra*, 129 Vt. 615, 618, 285 A.2d 732, 735 (1971), where we held that a tenant does not assume the risk of injury from a dangerous stairway because use of the stairway was a "necessitous action . . . and not a deliberate act involving a voluntary choice within the meaning of the doctrine."

Although the majority acknowledges the error in the assumption of the risk language, it finds that it does not warrant reversal because it was merely a transition to the contributory negligence discussion and the jury did not find contributory

negligence. The instructions here were written with appropriate subtitles to guide the jury in what they were considering. The language at issue precedes a section distinctly headed, "contributory negligence," and there is no indication that it was a transition to that section or was part of the contributory negligence discussion. Because of its placement, it is very possible that the jury dealt with assumption of the risk as part of its determination that defendant was not negligent, without having reached the issue of contributory negligence. Even if the assumption of the risk language were included with the contributory negligence discussion, it would be confusing to the jury, as we held in *Windsor Hospital Corp.*. This is not a case where the charge, taken as a whole, is clearly understandable, though not worded as the appealing party desires. On the contrary, the charge does not correctly state the law and is confusing.

I would reverse and remand for a new trial. I am authorized to state that Chief Justice Allen joins in this dissent.