**Lawrence Marzec-Gerrior and Mary Marzec-Gerrior v. D.C.P. Industries, Inc. and David Peterson, d/b/a D.C.P. Industries, Inc. v. Joseph P. Carrara, Inc.**

[674 A.2d 1248]

No. 94-369

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ.**

Opinion Filed December 15, 1995

Motion for Reargument Denied January 17, 1996

---

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiffs-Appellants.

*Lisa Chalidze* and *Karen A. Kalter* of *Hull, Webber & Reis*, Rutland, for Defendants-Appellees/Cross-Appellants.

*James C. Foley, Jr.* of *Deppman & Foley, P.C.*, Middlebury, for Third-Party Defendant-Cross-Appellee.

**Allen, C.J.** Plaintiff Lawrence Marzec-Gerrior was injured when a concrete slab dropped from a crane. He instituted this action for damages against the defendant crane operator, which, in turn, brought a third-party complaint against plaintiff's employer. Plaintiff Mary Marzec-Gerrior joined to recover for the loss of consortium of her husband. Plaintiffs appeal from the denial of their motion for judgment notwithstanding the verdict following an adverse jury verdict. We affirm.

The employer hired defendant and his crane to lift prestressed concrete slabs from a storage area in the employer's yard onto a flat-bed trailer for transportation to a location in New Hampshire. The slabs were connected to slings hung from the crane's hook by "rigging" — two bolts inserted into receptacles embedded in each end of the slab. The bolts were inserted by employees of plaintiff's employer, and the accident occurred because one of the bolts had been screwed down only one or two turns rather than all the way into the insert. Plaintiff was injured while guiding the slab onto the flat-bed trailer.

On appeal, plaintiffs assert that the trial court should have directed a verdict for them, that the trial court erred in its charge to the jury,

and that the court erred in denying a motion to amend their complaint.

The motion for a directed verdict was based on a violation of a VOSHA regulation, which states:

> *Moving the load* (i) The employer shall assure that:
>
> . . .
>
> (b) The load is well secured and properly balanced in the sling or lifting device before it is lifted more than a few inches.

29 C.F.R. § 1910.180(h)(3)(i)(b).

■■ Plaintiffs contend that the fall of the slab is proof of the violation of the VOSHA regulation and that the violation created a presumption of negligence which was unrebutted, thereby warranting a directed verdict. As we noted in *Ball v. Melsur Corp.*, 161 Vt. 35, 633 A.2d 705 (1993), the violation of an OSHA/VOSHA regulation is properly admissible as evidence of a standard of care. *Id.* at 43, 633 A.2d at 712. Plaintiffs' experts opined that the regulation required the crane operator to be certain that the bolt was screwed in all the way, and if in doubt, to get out of his cab and "go over and look." Defendant's evidence was that plaintiff's employer was responsible "from the hook down" and produced expert testimony that defendant's method for testing the reliability of the attachment of the crane to the slab met applicable standards. In reviewing a grant or denial of a motion for a directed verdict, this Court must view the evidence in the light most favorable to the nonmoving party. *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 239, 552 A.2d 1201, 1201 (1988). Any presumption created by the evidence of the violation of the regulation was sharply rebutted by defendant's evidence, and the trial court did not err in denying plaintiffs' motion.

Plaintiffs also argued that the court erred in its instructions to the jury. We do not reach this issue as there was no objection made to the charge after its delivery. *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 138, 636 A.2d 744, 750 (1993) (post-charge objection must be made to preserve issue for appeal).

■ Plaintiffs' third argument is that the trial court erred in refusing to allow them to amend their complaint to reinstate the claim alleging strict liability. Plaintiffs fail to demonstrate how they were prejudiced by the denial, and in an absence of any such showing, any error will be presumed to be harmless. *Green Mountain Marble Co.*

*v. State Highway Bd.*, 130 Vt. 455, 468, 296 A.2d 198, 206 (1972). A reinstatement of the strict liability claim would not have entitled them to a grant of their motion for a directed verdict nor would it have cured the failure to object to the jury instruction.

In view of our disposition, it is unnecessary to consider defendant's request to reinstate the third-party claim.

*Affirmed.*

**Dooley, J.,** concurring. Our law on the effect of violation of safety statutes and regulations on the duty owed in determining whether an actor was negligent is in serious need of reevaluation. The traditional analysis, defining violation of a safety statute as a rebuttable presumption, is unworkable and internally inconsistent. A glimmer of alternatives is perceptible in some of the cases. I write separately in the hope that it may precipitate some movement to a usable policy in an important area of the law.

We have historically rejected the notion that violation of a safety statute is negligence per se. See *Landry v. Hubert*, 101 Vt. 111, 113, 141 A. 593, 594 (1928). Instead, we have held that it creates a prima facie case of negligence: "It gives rise to a rebuttable, rather than conclusive presumption of negligence and proof of the attendant circumstances may, in a civil case, counter-balance or overcome the effect of the statute." *Id.* As we refined our understanding of a rebuttable presumption to mean locating the burden of production, rather than supplying evidence, see *Tyrrell v. Prudential Ins. Co. of America*, 109 Vt. 6, 22-24, 192 A. 184, 191-92 (1937), we applied this jurisprudence to the effect of safety statute violations. The effect was stated in 1971 as follows:

> The rules of the road are safety statutes and proof of their violation, on the part of one charged with negligence, makes out a *prima facie* case of negligence against the offending operator. But this presumption of negligence is, of course, open to rebuttal. . . . Being a disputable presumption, it shifts to the party against whom it operates the burden of evidence. . . . And when that party has produced evidence fairly and reasonably tending to show that the real fact [i.e., negligent conduct] is not as presumed, the office of the presumption is performed and disappears from the arena.

*Larmay v. VanEtten*, 129 Vt. 368, 371, 278 A.2d 736, 738-39 (1971) (citations omitted).

Since *Larmay*, we have codified the rules on rebuttable presumptions in Rule 301 of the Vermont Rules of Evidence. We have held that Rule 301 governs the effect of a breach of a safety statute. See *Favreau v. Miller*, 156 Vt. 222, 233, 591 A.2d 68, 75 (1991).

The main problem with the rebuttable presumption analysis is that it leaves no real role for the jury.* Presumptions shift the burden of evidence production, not the burden of persuasion. V.R.E. 301(a). If the evidence is conclusive on the existence of the basic fact — here the violation of a safety rule — and the defendant fails to rebut the presence of the presumed fact — here that defendant was negligent — the judge finds the presumed fact as a matter of law. V.R.E. 301(c)(1). On the other hand, if there is at least some evidence of the basic fact, and defendant has offered evidence to rebut the presumed fact, "the question of the existence of the presumed fact [is submitted] to the jury on the evidence as a whole without reference to the presumption." V.R.E. 301(c)(3). In a safety rule case where there is at least some evidence of the violation of the safety rule, the effect is that the jury is not informed of the safety rule if the defendant puts on some evidence that he or she was not negligent despite the rule violation.

The rule may direct the negligence question to the jury without reference to the safety statute, but that result is inconsistent with law and practice. Although we have cases like *Larmay* that envision that result (the presumption "disappears from the arena"), we also have cases that have reversed verdicts *because the jury was not told about the safety statute*. See *Campbell v. Beede*, 124 Vt. 434, 438-39, 207 A.2d 236, 240-41 (1965). We could, of course, insist on enforcement of the evidence rule, but this would give virtually no effect to a breach of a safety rule or statute. We refer to our presumptions as "bursting bubbles" because almost any evidence will rebut the presumption and burst the bubble. See, e.g., *Woolen Mill Assocs. v. City of Winooski*, 162 Vt. 461, 463, 648 A.2d 860, 862 (1994). The evidence rule means that juries will almost never be told of the safety rules or statutes.

Trial judges are now left in an impossible situation. They must tell the jury about the safety statute or regulation, but have no clear direction on what to tell the jury about its effect. The result in most cases, I suspect, is a charge like that given in this case. The judge told

---

*There is a theoretical role for the jury if the violation of the safety rule is disputed, but there is no dispute that if it was violated defendant was negligent. See V.R.E. 301(c)(2). Although this situation is possible, it is highly unlikely.

the jury about the VOSHA regulation and what the words mean, but little about what to do with it. The closest the charge comes to informing the jury about the effect of the VOSHA regulation was in the following words:

> Evidence of th[e] standard of care has come into the case in the form test of expert and lay witnesses as to the expected conduct of crane operators and in the form of a governmental regulation, referred to in the trial as the VOSHA regulation. The jury reviews all of the evidence presented on this issue to determine the standard of care applicable to this situation.

Beyond the general direction that the jury could consider the regulation and that it relates to the standard of care, the charge gives no guidance on what the jury is to do if it finds that defendant violated the safety law.

The application of presumption rules has brought us far afield of the rationale we intended to implement. The rationale is set out in *Landry*:

> There is, indeed, force to the conclusion that one who violates a statute plainly enacted to compel the exercise of due care should not be permitted to debate the question of his negligence in any particular instance where he has seen fit to act contrary to the law and has, when so doing, injured another whom the law was designed to protect. Yet such a position disregards the well-known standard of the prudent man in like circumstances on the assumption that one could never substitute his own judgment as to careful conduct in a definite and perhaps unusual situation for the general judgment of the Legislature expressed in the law and be in fact careful and prudent. Granted that the violation of such a statute as this will usually place the wrongdoer outside the prudent man classification, to rule that it always does so takes away from the jury the right to apply the prudent man test at all, whenever such a statute has been transgressed.

*Landry*, 101 Vt. at 112-13, 141 A. at 593-94. Rather than reserving the opportunity for an exception where violation of the safety statute or rule is not negligence, our rebuttable presumption analysis is taking the safety statute or rule entirely out of the decision-making process.

Some alternatives are suggested in our cases. On a number of occasions, we have noted: "Safety rules are not hard and fast, nor

absolute in application to all circumstances. They are guides to the main issue of whether the actor's conduct meets the standard required of a prudent man under the circumstances." *Beaucage v. Russell*, 127 Vt. 58, 62, 238 A.2d 631, 634 (1968). More recently, we stated, "[t]he violation of a safety statute is evidence of negligence." *Gilbert v. Churchill*, 127 Vt. 457, 461, 252 A.2d 528, 530 (1969). Even more recently, as cited by the majority, we have allowed evidence of violation of a safety regulation as evidence of a standard of care, *Ball v. Melsur Corp.*, 161 Vt. 35, 43-44, 633 A.2d 705, 712 (1993), the use made by the court in this case.

These excerpts are similar or identical to one of the main rules on the effect of safety statutes and regulations used in other jurisdictions — that the violation of the safety statute or rule is evidence of negligence. See W. Keeton, et al., Prosser and Keeton on the Law of Torts § 36, at 230 (5th ed. 1984). Because the language was adopted in at least one of our cases, see *Favreau*, 156 Vt. at 233, 591 A.2d at 75, it is apparently being used in jury charges in the trial courts. In a weak form, it was used in this case.

The rule that treats violations of safety statutes and regulations as evidence of negligence puts the safety statute or regulation before the jury whenever it could find the statute or regulation has been violated and the violation could be found to be a proximate cause of the harm. The rule's weakness is that it does not direct the jury to follow the safety statute in any case so that even egregious violations of clear and specific safety directives become only one factor for the jury to consider. Nor does it necessarily convey that the safety statute or regulation should be treated as a "guide" to determining the proper standard of care. A charge like that here, which says little more than that evidence of the safety statute or regulation is relevant, can be seen to comply.

A stronger alternative is the negligence per se rule, which we have rejected historically. Treating the violation of a safety statute as negligence per se is in fact the approach followed in most states. The "per se" approach is described in Prosser and Keeton:

> Once the statute is determined to be applicable — which is to say, once it is interpreted as designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation — and once its breach has been established, probably a majority of the courts hold that the issue of negligence is thereupon conclusively determined, in

the absence of sufficient excuse, and that the court must so direct the jury. The standard of conduct is taken over by the court from that fixed by the legislature, and "jurors have no dispensing power by which to relax it," except insofar as the court may recognize the possibility of a valid excuse in a tort action for damages for disobedience of the criminal law. This usually is expressed by saying that the unexcused violation is negligence "per se," or in itself. The effect of such a rule is to stamp the defendant's conduct as negligence, with all of the effects of common law negligence, but with no greater effect. There will still remain open such questions as the causal relation between the violation and the harm to the plaintiff, and, in the ordinary case, the defenses of contributory negligence, and assumption of the risk.

Keeton, et al, *supra*, § 36, at 229-30 (quoting *Martin v. Herzog*, 126 N.E. 814, 815 (N.Y. 1920) (Cardozo, J.)) (footnotes omitted).

This approach is also that of the Restatement (Second) of Torts (1965). Negligence, in the Restatement, is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." § 282. The standard is generally that of a reasonable person under like circumstances, *id.* § 283, which "may be (a) established by a legislative enactment or administrative regulation which so provides, or (b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide . . . ." *Id.* § 285; see also *id.* § 286 (establishing when standard of conduct defined by legislation or regulation will be adopted). The unexcused violation of such legislation or regulation is negligence in itself. *Id.* § 288B(1).

Although I favor adoption of a negligence per se approach, in many or all cases, to fully implement the safety statute or rule, the most important step is to abandon the current approach, whatever alternative is adopted. The rebuttable presumption approach has generated scores of appeals wherever it is used and yet has almost no real impact on the result in any case. The real impact of safety statutes and rules is in what the jury does with them, and yet our cases say almost nothing about that. Virtually any alternative to the current approach is better.

I concur in the majority's analysis of the specific claims made by plaintiffs. Plaintiffs have argued that they were entitled to a directed verdict because defendant failed to rebut the presumption that violation of the VOSHA rule was negligence. In view of defendant's

expert evidence that he did what was appropriate under the circumstances to assure the safety of the lift, the presumption was clearly rebutted. I also concur that the lack of timely objection to the charge prevents reversal on a charge error and that there was no prejudicial error in the rejection of the motion to amend.