2011 VT 16

# Karen Weiler v. Richard Hooshiari

[19 A.3d 124]

No. 10-003

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed February 10, 2011

*Charles S. Martin* of *Martin & Associates*, Barre, for Plaintiff-Appellee/Cross-Appellant.

*Joslyn L. Wilschek* of *Primmer Piper Eggleston & Cramer PC*, Montpelier, for Defendant-Appellant/Cross-Appellee.

¶ 1. **Burgess, J.** Defendant Richard Hooshiari appeals from the trial court's decision to grant judgment in favor of his former tenant, plaintiff Karen Weiler. The court found that landlord violated the implied warranty of habitability when heavy snow and ice fell from the roof of tenant's residence onto her parking place, destroying her car. The court awarded damages measured by the difference between the value of the car before the incident and its sale price afterwards. Landlord contends that the implied warranty of habitability does not extend to automobiles and that even if the implied warranty of habitability were to apply, the court impermissibly granted consequential damages beyond the value of the lease as warranted. Tenant cross-claims, arguing that her belated request to add a claim of negligence should have been granted under Vermont Rule of Civil Procedure 15. We hold that the implied warranty of habitability does not protect tenant's automobile and therefore reverse, while upholding the trial court's denial of the cross-claim.

¶ 2. The following facts are uncontested. On April 16, 2007, tenant and landlord entered into a residential lease for an apartment in downtown Montpelier. The lease provided tenant with off-street parking. Tenant moved into the apartment with her children, where she resided through February 8, 2008, parking in a designated space. On that day, an accumulation of snow and ice slid off the dwelling's steep roof and onto her car, causing thousands of dollars in damages. Tenant brought a breach of contract action demanding compensation for the loss of the car. At the beginning of the case, the court inquired if tenant was pursuing a negligence claim against landlord and was advised she was not. Moments before the end of her case, tenant moved under Rule 15 to amend her complaint to include a claim of negligence, and the court denied her motion.

¶ 3. The trial court ultimately held that, although the lease explicitly disclaimed landlord responsibility for damage to tenant property,[1] that provision was voided by the implied warranty of habitability. The court reasoned that the implied warranty of habitability applied to personal property "in these narrow circumstances" where the facts were easy to determine. The court

---

[1] Section 17 of the lease reads: "Tenant's Personal Property. Tenant shall protect her property with adequate personal property insurance. Landlord is not responsible for loss of or damage to Tenant's personal property."

concluded that, under Restatement (Second) of Property: Landlord and Tenant § 17.6 (1977) (discussing landlord's duties to repair dangerous conditions), consequential damages were recoverable.

¶ 4. Whether the warranty of habitability applies in this situation and, if so, whether the trial court's damage award was calculated using the proper standard, are questions of law. Questions of law are reviewed de novo. *Hubbard v. Metro. Prop. & Cas. Ins. Co.*, 2007 VT 121, ¶ 6, 182 Vt. 501, 944 A.2d 891. The trial court's denial of plaintiff's motion to amend the complaint is reviewed for abuse of discretion. *Hunters, Anglers & Trappers Ass'n of Vt., Inc. v. Winooski Valley Park Dist.*, 2006 VT 82, ¶ 17, 181 Vt. 12, 913 A.2d 391.

¶ 5. Vermont recognized the implied warranty of habitability as applied to leaseholds in *Hilder v. St. Peter*, where the Court declared that "[t]he modern view [of the landlord-tenant relationship] favors a new approach which recognizes that a lease is essentially a contract between the landlord and the tenant wherein the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent." 144 Vt. 150, 158-59, 478 A.2d 202, 208 (1984) (quotation omitted). In light of this relationship, *Hilder* held that every lease, regardless of its express conditions, includes an implied warranty of habitability. *Id.* at 159-60, 478 A.2d at 208. The landlord is understood to promise to provide and maintain "premises that are safe, clean and fit for human habitation." *Id.* at 159, 478 A.2d at 208. *Hilder* further explained that "the implied warranty of habitability covers all latent and patent defects in the essential facilities of the residential unit," specified as those "facilities vital to the use of the premises for residential purposes." *Id.* at 160, 478 A.2d at 208 (quotation omitted). The facts of *Hilder* involved a landlord who deliberately refused to remedy a persistently clogged toilet, severe water leakage, and a sewage spill, and was deemed in violation of the implied warranty of habitability. *Id.* at 156, 165, 478 A.2d at 206, 211.

¶ 6. Failure to protect a tenant's car does not implicate this warranty. By its own terms, as recognized in the case law and as later generally codified in statute, the warranty of habitability promises that the landlord will "deliver over and maintain, throughout the period of the tenancy, premises that are safe,

clean and fit for human habitation." 9 V.S.A. § 4457(a); *Hilder*, 144 Vt. at 159, 478 A.2d at 208.[2] That the warranty does not extend to personal property is reflected by the reference in *Hilder* to "[e]ssential facilities . . . vital to . . . residential purposes." 144 Vt. at 160, 478 A.2d at 208 (quotation omitted). This is followed by a description of the substantial housing code violations sufficient for a prima facie case of breach, with clarification that de minimis violations not affecting the "health or safety of the tenant" would not sustain a claimed breach of warranty. *Id.* at 160, 478 A.2d at 209-10 (quotation omitted). Further applications of the habitability warranty to date have been limited to circumstances of similar failures to meet personal safety and health standards for tenant occupation of the premises. See, e.g., *Willard*, 2005 VT 69, ¶ 1 (unsafe drinking water); *Nepveu v. Rau*, 155 Vt. 373, 375, 583 A.2d 1273, 1274 (1990) (broken toilet); *Gokey v. Bessette*, 154 Vt. 560, 565, 580 A.2d 488, 492 (1990) (broken septic and heat systems and leaky roof); *Birkenhead v. Coombs*, 143 Vt. 167, 173, 465 A.2d 244, 246-47 (1983) (deteriorating walls, soiled carpet, disconnected heat and electricity, and inadequate plumbing).

█ ¶ 7. In contrast, the claim here involves no compromise to tenant's personal health and safety, but rather damage to her personal property unrelated to landlord's implied or statutory guarantee of premises "safe, clean and fit for human habitation." 9 V.S.A. § 4457(a); *Hilder*, 144 Vt. at 159, 478 A.2d at 208. Tenant maintains that a conventional lifestyle involving children and employment requires ready transportation, meaning that a secure parking place is a critical component of human habitation. While it may be exceptionally inconvenient not to have access to a parking space and therefore access to a car, the absence of a parking space is not an equivalent threat to health and safety as

---

[2] In 1986, partially in response to *Hilder*, the Legislature moved to codify the implied warranty of habitability in the Residential Rental Agreements Act. 1985, No. 175 (Adj. Sess.), § 1. The code defines the warranty of habitability in essentially the same terms as *Hilder*. 9 V.S.A. § 4457(a). In *Willard v. Parsons Hill Partnership*, this statute was found to apply only to patent rather than latent defects. 2005 VT 69, ¶ 27, 178 Vt. 300, 882 A.2d 1213. Therefore, the Court held that the statute had not superseded the common law with regard to latent defects. *Id.* The law was amended in 2000, before the decision in *Willard* but after the relevant events in *Willard* took place, to cover certain latent defects. 1999, No. 115 (Adj. Sess.), § 6. Since the disposition of this case would be the same under the statute and at common law, we do not address whether the implied common law warranty of habitability remains viable after the 2000 amendment.

that posed by clogged toilets, raw sewage, and poisoned water. If, as tenant posits, private parking is so vital to habitability as to fall within the warranty, every residential lease would have to guarantee a parking place. This is neither necessary nor the law as outlined by the cases or the statute, and we decline to extend the habitability warranty to parking.[3]

¶ 8. Tenant argues further that the habitability warranty should be coextensive with terms of the lease that include a parking place with the residence. Again, we disagree. The warranty applies to premises being "safe, clean and fit for human habitation." 9 V.S.A. § 4457(a); *Hilder*, 144 Vt. at 159, 478 A.2d at 208. Leases may include many amenities that are clearly beyond such a basic threshold. Tenant points to no jurisdiction that extends the warranty of habitability to cover all lease provisions beyond essential sanitation and tenant safety. New York, a state with a similar warranty of habitability standard to our own, has rejected using a lease in this way. See *Solow v. Wellner*, 658 N.E.2d 1005, 1008 (N.Y. 1995).

¶ 9. Tenant's theory of recovery, as well as the trial court's damage award, also ignore the longstanding distinction between contract and tort law. Leases are contracts, and damages for breach generally turn on the respective promises of the parties and are limited to recovery of the benefit of the bargain. Claims for personal injury or property damage sound in tort, typically in an action for negligent breach of a duty of care, and depend on comparative degrees of fault. That the habitability warranty is a creature of contract was recognized in *Hilder*, which declared:

> Because we hold that the lease of a residential dwelling creates a contractual relationship between the landlord and tenant, the standard contract remedies of rescission, reformation and damages are available to the tenant when suing for breach of the implied warranty of habitability. The measure of damages shall be the difference between the value of the dwelling as warranted and

---

[3] The only case to hold to the contrary in any jurisdiction is a North Carolina appellate court decision, *Pierce v. Reichard*, which held that a tenant could recover the cost of a broken windshield. 593 S.E.2d 787, 792 (N.C. Ct. App. 2004). Far exceeding Vermont's warranty jurisprudence founded on personal safety, cleanliness, and fitness, the holding in *Pierce* is not persuasive.

the value of the dwelling as it exists in its defective condition.

144 Vt. at 161, 478 A.2d at 209 (citation omitted).[4] More recently, we reiterated that such damages are measured as "the difference in value between the agreed-upon rent for [the] unit in habitable condition, and the value of the same unit with habitability defects." *Willard*, 2005 VT 69, ¶ 30.

¶ 10. Maintaining the distinction between contract and tort claims in *Favreau v. Miller*, we declined to extend the implied warranty of habitability to personal injuries. 156 Vt. 222, 591 A.2d 68 (1991). *Favreau* recognized that remedies at law already exist for personal injuries and that "the concepts of tort and negligence law provide the more straightforward way to describe the respective duties and liabilities of the parties." *Id.* at 229, 591 A.2d at 73. We specifically declined to "do away" with the principles of tort-based claims for bodily injury in favor of recovery of all damages stemming from a breach of lease regardless of fault. *Id.* at 230, 591 A.2d at 73. Claims for bodily injury involve issues beyond whether there was a breach of a lease and provoke inquiry into fault, causation, and degrees of comparative negligence. *Id.* As stated in *Favreau*, "[t]he law of negligence is best suited to answer these questions and has developed rules for their accommodation." *Id.* Thus, abandoning these considerations in claims of injury arising within a landlord-tenant context was too great a departure from existing law in the absence of legislation. *Id.*

¶ 11. The precepts of *Favreau* are no less applicable here, but the trial court's award, and tenant's arguments in support of it, promote recovery for injuries to personal property under circumstances that would preclude recovery for injuries to persons. Such a result is neither logically tenable nor necessary to assure tenants justice in the event of landlords failing to exercise due care causing damage to a tenant's belongings.[5] The authority cited

---

[4] *Hilder* also noted that punitive damages and damages for "discomfort and annoyance" could be claimed for failure to abide by the warranty of habitability. 144 Vt. at 162-63, 478 A.2d at 209-10. Tenant here made no claims under either category of damages.

[5] To the extent that leases may, as in this case, include clauses purporting to waive landlord liability, there is also a body of negligence case law addressing the acceptable breadth and enforceability of such waivers. See, e.g., *Dalury v. S-K-I, Ltd.*, 164 Vt. 329, 330, 670 A.2d 795, 796 (1995) (holding release form skier signed

by the trial court, the Restatement (Second) of Property: Landlord and Tenant, for awarding tenant the value of her automobile lost as a consequence of a breach of the warranty of habitability is, according to our precedents, inapposite.[6]

¶ 12. As recounted by the trial court, the Restatement anticipates that when it is "accepted that the implied warranty of habitability imposes a duty on the landlord to provide the tenant with housing which does not subject the tenant to unreasonable danger of harm, it will be difficult to insulate the landlord from tort liability when his failure to meet his duty results in injury to the tenant." Reporter's Note, Restatement (Second) of Property § 17.6. First, the Restatement addresses personal safety of tenants not at issue here. Second, the Restatement requires a tenant to show that in addition to a breach of the implied warranty of habitability, the landlord "failed to exercise reasonable care to repair the condition," a negligence standard. Restatement (Second) of Property: Landlord and Tenant § 17.6. As discussed further, *infra*, ¶ 14, tenant neither pled nor argued negligence here. Third, the Restatement's rationale for extending the warranty to overcome what the trial court characterized as a landlord's "insulation" from tort liability is not in play since no such insulation presents itself here.

¶ 13. Tenant contends that none of the elements identified in *Favreau*, commending determination under negligence law, exist here. Tenant posits that damage to the car was easily ascertainable, landlord's fault was clear, and tenant's lack of culpability was equally clear. Even assuming this to be correct — although we note that these points were neither stipulated to nor litigated below — such a situation is not likely to be universal in all tenant

---

granting ski area waiver of negligence unenforceable as contrary to public policy). This particular issue was not confronted or addressed here, however.

[6] The Restatement reads:

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
>
> (1) an implied warranty of habitability; or
>
> (2) a duty created by statute or administrative regulation.

Restatement (Second) of Property: Landlord and Tenant § 17.6.

claims for similar property damage. If it were established in this case that landlord failed to reasonably care for the roof or parking space, that tenant lent none of her own carelessness to the situation, and that causation was clear, these factors are all fairly assessable in a negligence claim. At the same time, none of those factors are critical to whether landlord breached his implied warranty of habitability to maintain premises safe and sanitary for the tenant's person.

■■■ ¶ 14. Turning to tenant's cross-claim, the trial court properly denied her request that a count of negligence be included under Rule 15. We affirm a trial court's rejection of motion to amend unless there is abuse of discretion. *Hunters, Anglers & Trappers*, 2006 VT 82, ¶ 17. Rule 15(b) allows amendment of pleadings if a complaint is tried by "express or implied consent of the parties." Tenant did not include negligence as a cause of action in her original complaint, and landlord did not expressly consent to such a suit. The trial court's inquiries prompted no claim for negligence due to tenant's tactical determination. Nor does it appear that landlord implicitly acceded to a negligence case by joining in a de facto trial over elements of negligence liability not included in the complaint. See *Desrochers v. Perrault*, 148 Vt. 491, 494, 535 A.2d 334, 336 (1987) (holding no amendment was due under Rule 15(b) to conform to evidence when, after objection to evidence on fraud issue foreign to actual complaint, no evidence of fraud introduced and the issue itself not raised again at trial).

*The trial court's denial of plaintiff's motion to amend her complaint is affirmed. The trial court's judgment for plaintiff as to landlord liability is reversed.*