NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 9

No. 2018-086

| | |
|---|---|
| Matthew Ziniti | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| New England Central Railroad, Inc. | October Term, 2018 |

Robert A. Mello, J.

John F. Evers of Shoup Evers & Green, Burlington, Robert L. Pottroff and Nathan L. Karlin of Pottroff & Karlin LLC, Manhattan, Kansas, Mark Parrish and Joshua Sanders of Boyd, Kenter, Thomas & Parrish, Independence, Missouri, and Thomas M. Barron, Quincy, Massachusetts, for Plaintiff-Appellant.

Mark D. Oettinger and Andrew H. Montroll of Montroll, Backus & Oettinger, P.C., Burlington, and Michael B. Flynn, Lori A. Wirkus and Matthew M. Cianflone of Flynn Wirkus Young, P.C., Quincy, Massachusetts, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** Plaintiff, who sued defendant railroad after he was seriously injured in a train-car collision, appeals the trial court's partial summary judgment ruling and the ensuing jury verdict for defendant. Plaintiff argues that the trial court erred by: (1) granting defendant summary judgment precluding him from presenting evidence that defendant's failure to place a crossbuck[1] on the right side of the road at the site of the railroad crossing, or to take steps to ensure that an "advance warning" sign was present, caused or contributed to the

---

[1] A crossbuck sign, also known as a railroad crossing sign, consists of two rectangularly shaped signs that cross each other perpendicularly and are placed diagonally to the ground. The signs have a white background and black lettering that reads: "RAILROAD CROSSING." A crossbuck sign is designed to warn motorists of an imminent railroad crossing.

collision; (2) denying a request for the jurors to view the crossing where the accident occurred; (3) denying his motion for a directed verdict on the railroad's negligence on account of its violation of a safety statute relating to maintenance of the railroad's right of way; and (4) denying his request for an instruction on the sudden emergency doctrine. We reject each of these arguments and, accordingly, affirm the judgment in favor of defendant.

## I. Facts

¶ 2. The parties stipulated to the following facts, which were read to the jury at trial. The collision that is the subject of this case occurred at a railroad grade crossing on Slaughterhouse Road in Northfield Falls, Vermont. Slaughterhouse Road is a Class IV town highway open to public use, but is not normally used by school buses, large commercial vehicles, or tractor-trailers. It is a dirt or gravel road that begins at Route 12, runs over the Dog River via a one-lane covered bridge, and then winds to the left uphill over the railroad track and past two homes before it comes to a dead end west of the crossing. There is no indication that Slaughterhouse Road is a dead-end road until notice of such is provided by a "DEAD END" sign located on the same post as and below the crossbuck sign at the railroad crossing.

¶ 3. A single, mainline north-south train track intersects Slaughterhouse Road at the crossing. Train traffic at the crossing has historically consisted of only four trains per day, but at the time of the collision an additional train per day ran over the crossing in either direction.

¶ 4. New England Central Railroad, Inc., ("NECR") owns the track and crossties for a distance of at least 1320 feet in either direction along the railway line from the crossing. Since 1995, NECR has maintained and controlled a right of way at the crossing that extends approximately fifty feet in each direction from the centerline of the track. The Town of Northfield plows and maintains the road on both sides of the crossing. Although the crossing is a

2

public crossing, an employee of an NECR contractor incorrectly designated it as a private crossing on a Federal Railroad Administration inventory form submitted in October 2011.[2]

¶ 5.    At the time of the 2011 collision in this case, a crossbuck sign was posted at the crossing on the left-hand side of Slaughterhouse Road from the perspective of motorists approaching from Route 12. The crossbuck sign is visible upon exiting the bridge, turning left, and starting up the hill. There is a rock outcropping on the right-hand side of the road just before the crossing, which limits an approaching driver's visibility of the track to the right. At some point, a motorist approaching the crossing from the direction of Route 12 clears the rock outcropping and is able to see a distance down the track to the right.[3] Slaughterhouse Road intersects the track at an angle. The crossing surface consists of wooden planks.

¶ 6.    Shortly after noon on the day of the collision, plaintiff left Norwich University, where he was a student, and traveled north on Route 12 toward the Town of Northfield. At the time, he was living in a rented apartment just west of Route 12, not far from the Slaughterhouse Road crossing. Plaintiff knew that the track was active; he had heard the train whistles at various times as trains passed through. He was an avid runner who often jogged along the roadways near his apartment, including Cox Brook Road, which crossed the track about 1800 feet north of the Slaughterhouse Road crossing. Although he had never driven on Slaughterhouse Road, he knew that it branched off Route 12.

¶ 7.    That afternoon, plaintiff was mapping out a new running route in his pickup truck, intending to follow Slaughterhouse Road to the point where he thought it connected with Cox Brook Road. Shortly before the collision, he turned from Route 12 onto Slaughterhouse Road and drove over the covered bridge. His truck windows were rolled up and he was listening to music through the truck's stereo system. As he drove over the covered bridge, he saw the hill,

---

[2] Plaintiff contends that because of this incorrect designation by the railroad, the Town of Northfield did not place an advance warning signal at the crossing.

[3] The parties disagree as to whether a driver has reasonable time to safely stop upon seeing an oncoming train after clearing the rock outcropping.

but he does not remember anything else beyond that point. An oncoming train struck his truck as he was crossing the track. According to the event-recorder data downloaded from plaintiff's truck, the truck slowed down from thirteen miles per hour to six miles per hour but did not stop in the last five seconds before impact.

¶ 8.    The train that struck plaintiff's pickup truck was approximately 15.5 feet tall and painted bright red on its front. The train's three crewmembers were riding in the lead locomotive. As the train approached the crossing, one of the crew members was blowing the train's horn. According to the data downloaded from the locomotive's event recorder, the horn was sounded for eleven seconds prior to impact. Plaintiff admits that the train crew properly sounded the train's horn. The horn was loud enough to comply with federal regulations.

¶ 9.    The event-recorder download showed that the train's speed as it approached the Slaughterhouse Road crossing was thirty-four miles per hour. A crew member applied the train's emergency brake after observing plaintiff's vehicle, but he was unable to stop the train before it collided with plaintiff's truck on the track.

¶ 10.   In March 2014, plaintiff filed a complaint against NECR and three of its employees[4] alleging, among other things, negligence in failing to give an adequate audible warning of the train's approach, to provide adequate sightlines for motorists to see an approaching train at the crossing, to inspect and repair an unsafe crossing, to report unsafe conditions at the crossing, and to install adequate warning devices at the crossing. Over the next several years, the parties retained experts and engaged in discovery. In January 2017, the trial court narrowed plaintiff's claims to some extent in a summary judgment ruling. After a multiday jury trial on the remaining claims, the jury determined that NECR was not negligent and the trial court entered judgment for the railroad.

---

[4]  The trial court dismissed the three employees from the case in a January 3, 2018 entry order shortly before the trial.

¶ 11. On appeal, plaintiff challenges: (1) the trial court's summary judgment ruling precluding him from arguing that defendant was liable on account of the absence of a crossbuck on the right side of the road and an advance warning sign; (2) the court's denial of a request for a jury view of the accident site; (3) the court's denial of his motion for a directed verdict finding NECR liable as a matter of law on account of its violation of a safety statute relating to maintenance of the railroad right of way; and (4) the court's denial of his request for an instruction on the sudden emergency doctrine. We consider each challenge in turn.

II. Location of Crossbuck Warning Sign and Absence of Advance Warning Sign

¶ 12. In a January 2017 decision in response to the parties' cross-motions for partial summary judgment, the trial court granted defendants summary judgment on plaintiff's claim that NECR was negligent with respect to maintenance or operation of the horn. It also granted defendants summary judgment on any claim that the train was traveling at an excessive speed. The court denied defendants' motion for summary judgment with respect to plaintiff's claim that the railroad breached a duty to remove the rock outcropping and vegetation along the right of way, thereby leaving motorists with inadequate visibility of approaching trains. The court concluded that there was at least a disputed fact as to whether NECR breached its duty of care by failing to remove vegetation or the rock outcropping.

¶ 13. The court also denied summary judgment to both plaintiff and defendants with respect to plaintiff's claim that the visible warning device present at the time of the crossing—a single crossbuck sign on the left-hand side of the road—was inadequate to warn motorists of the crossing. The court ruled that there was at least a disputed fact as to whether NECR's failure to install certain additional warning devices, such as a stop sign, automated gates, flashing lights, an advance warning sign, or a cross-buck sign on the right was a breach of its duty of care. However, the court concluded with respect to certain of these warning devices—namely, a crossbuck on the right side of the road and an advance warning sign—that even if plaintiff established that the failure to place those particular warning devices was a breach of NECR's

5

duty of care, he could not establish that those particular omissions caused or contributed to the collision. The court concluded that plaintiff could establish that other alleged breaches of the duty of care—such as the failure to place gates or flashing lights at the intersection, or the failure to remove vegetation or the rock outcropping—did cause or contribute to the collision, but precluded plaintiff from presenting evidence that defendant's failure to place a crossbuck on the right side of the road, or to take steps to ensure that an advance warning sign was present, contributed to the collision. Plaintiff appeals this ruling.

¶ 14. In reviewing plaintiff's appeal of this summary judgment ruling, we apply the same standard as the trial court; we will uphold the court's ruling if no genuine issue of material fact exists and NECR is entitled to judgment as a matter of law. Ainsworth v. Chandler, 2014 VT 107, ¶ 8, 197 Vt. 541, 107 A.3d 905. Although we view the facts submitted in the pleadings and affidavits in the light most favorable to the nonmoving party and we give that party the benefit of all reasonable doubts and inferences in determining whether there is a genuine issue of material fact, "the nonmovant bears the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." Id. ¶¶ 3, 8 (quotation omitted). We conclude that defendant was entitled to summary judgment with respect to plaintiff's negligence claims resting on the absence of a crossbuck on the right and an advance warning sign because we conclude that plaintiff cannot meet his burden of proving the essential element of causation with respect to either claim.

¶ 15. Even assuming the absence of an advance warning sign or NECR's failure to place a crossbuck on the righthand side of the road amounted to a breach of the railroad's duty of care,[5] plaintiff could not prove defendant's liability for negligence without evidence that the

---

[5] Plaintiff's argument on this point rests on multiple safety statutes and regulations. Vermont law provides that railroads "shall maintain railroad crossing (crossbuck) signs conforming to the Federal Highway Administration's Manual on Uniform Traffic Control Devices [MUTCD], as amended from time to time, at every public highway where the same is crossed by its railroad at grade." 5 V.S.A. § 3581(a); see also 23 V.S.A. § 1025(a) (providing that MUTCD "for streets and highways as amended shall be the standards for all traffic control

6

collision would not have occurred had either of the signs been in place. "Common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, an actual injury to the plaintiff, and a causal link between the breach and the injury." Demag v. Better Power Equip., Inc., 2014 VT 78, ¶ 6, 197 Vt. 176, 102 A.3d 1101 (citation omitted). With respect to the element of causation, a plaintiff alleging negligence must show "both 'but-for' and proximate causation." Collins v. Thomas, 2007 VT 92, ¶ 8, 182 Vt. 250, 938 A.2d 1208. The former requires a showing "that the harm would not have occurred 'but for' the defendant's conduct such that the tortious conduct was a necessary condition for the occurrence of the plaintiff's harm"; the latter requires a showing "that the defendant's negligence was legally sufficient to result in liability" in that the injurious consequences flowed from the defendant's conduct and were not interrupted by some intervening cause. Id. (quotations and alteration omitted).

¶ 16. Although causation is normally left for the jury to determine, "it may be decided as a matter of law where the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." Id. (quotation omitted).

---

signs, signals, and markings within the State"); 23 C.F.R. § 646.214(b) (providing that, with respect to grade crossing improvements, proposed traffic control devices shall comply with MUTCD as supplemented by applicable state standards). Section 8B.03 of the MUTCD provides that on approaches to highway-rail grade crossings, "the Crossbuck sign shall be installed on the right-hand side of the highway" and that when sight distances are restricted or when unfavorable highway geometry exists, "an additional Crossbuck sign shall be installed on the left-hand side of the highway." U.S. Dep't of Transp., Fed. Highway Admin., Manual on Uniform Traffic Control Devices, § 8B.03 (2009), https://mutcd.fhwa.dot.gov/pdfs/2009r1r2/part8.pdf [https://perma.cc/685M-KWF4]. A Vermont Transportation Board regulation also provides that "a railroad-highway crossing sign (crossbuck) . . . shall be installed and maintained on the righthand side of every roadway as it approaches every crossing, on each side of the tracks," and that "[n]o exception shall be made . . . , except as approved in writing by this Board." Highway Grade Crossing Protection, Code of Vt. Rules 14 010 005, http://www.lexisnexis.com/hottopics/codeofvtrules. Because we conclude that plaintiff cannot prove that the absence of a crossbuck on the righthand side of the road was a but-for cause of the collision, we need not and do not address whether the absence of a crossbuck on the righthand side of the road violated a safety statute or regulation, or whether NECR therefore breached its duty of care.

## A. Absence of Righthand Crossbuck

¶ 17. No reasonable jury could conclude that the absence of a crossbuck sign on the right caused or contributed to the collision. We reach this conclusion because a crossbuck sign on the right would not have provided approaching motorists with any warning of the crossing beyond the warning already provided earlier by the crossbuck sign on the left, which was clearly visible to motorists exiting the covered bridge. In addition, we reject plaintiff's theory of causation—that the absence of a crossbuck on the right should have triggered NECR to provide a flagger at the crossing and thus caused or contributed to the collision.

¶ 18. On the first point, the extensive photographic evidence submitted by the parties demonstrates unequivocally that the crossbuck sign on the left-hand side of the road was plainly visible to motorists approaching from the east immediately upon exiting the covered bridge and heading for the crossing. It is also plainly evident from the photographs that a crossbuck sign on the right-hand side of the crossing would not have been immediately visible to a motorist upon exiting from the bridge and thus would not have provided any earlier, or meaningfully additional, notice of the crossing. For these reasons, we conclude that plaintiff cannot overcome the first hurdle of showing but-for causation. See Marshall v. Milton Water Corp., 128 Vt. 609, 612-13, 270 A.2d 162, 164 (1970) (noting that causation cannot be proved by mere "conjecture, surmise, or suspicion").

¶ 19. Plaintiff's theory of causation in response to this evidence requires multiple steps. Plaintiff cites deposition testimony in which NECR's corporate designee acknowledged that NECR's internal rules require stopping and flagging at crossings where mandated signs are missing. Because a mandated sign—a crossbuck sign on the right—was missing in this case, plaintiff argues that pursuant to NECR's internal rules it was required to stop and flag at the crossing. Had NECR provided a flagger, the collision would not have happened. In plaintiff's view, evidence of NECR's failure to stop and flag the non-compliant crossing could have

8

provided the jury with the necessary causal link to establish NECR's negligence on the basis of its alleged failure to place a required crossbuck.

¶ 20. To the extent that plaintiff's stop-and-flag argument is an alternative theory of negligence, the trial court did not preclude him from presenting it to the jury. That is, plaintiff was free to present evidence that the standard of care at this intersection required a flagger, or a flagger in the absence of certain other warning signs or devices.

¶ 21. But insofar as plaintiff's theory of liability is that the railroad breached its duty of care by failing to put a crossbuck on the righthand side of the road, the question before this Court is whether that failure was a but-for cause of the collision—that is, "a necessary condition for the occurrence of the plaintiff's harm." Collins, 2007 VT 92, ¶ 8 (quotation omitted). In other words, if NECR had not failed to place the crossbuck on the righthand side of the road, would the accident have happened? NECR's internal policies as to how to respond to a noncompliant crossing do not enter into this causation analysis.

## B. Absence of Advance Warning Sign

¶ 22. For similar reasons, we affirm the trial court's summary judgment as it relates to the advance warning sign. Plaintiff contends that because NECR improperly designated the crossing as a private crossing in a 2011 Federal Railroad Administration inventory form, local road authorities were not prompted to install an advance warning sign. He asserts that the signage scheme outlined in the applicable regulations allows motorists to assume that there is no need to stop at crossings that do not have an advance warning sign unless a flagger or an active warning device signals for motorists to stop, and that a jury could accordingly conclude that the absence of an advance warning sign caused the collision.

¶ 23. We conclude that, given the specific configuration of the roadway approaching this crossing, including the layout of the road, the covered bridge, and the surrounding topography, an advance warning sign further in advance of the crossing would not have provided approaching motorists with any meaningful additional notice of the crossing. Thus, no

9

reasonable jury could conclude that the lack of an advance warning sign was a cause of the accident. We do not mean to imply that the absence of an advance warning sign—which is intended as a supplemental visual signal cautioning motorists of an upcoming railroad crossing— can never legally contribute to the cause of a collision. But, in this case we have not found, and plaintiff has not directed us to, anything in the record suggesting that a reasonable juror could conclude that the absence of an advance warning sign was a cause of this collision. For that reason, the trial court did not err in deciding the question as a matter of law. See Collins, 2007 VT 92, ¶ 8.

### III. Site Visit

¶ 24. This issue arose in the middle of the multi-day jury trial when the court announced that one of the jurors had asked the court officer if the jury could view the crossing. The court asked the parties whether they wanted a site visit. Plaintiff did not object. Defendant objected, arguing that the circumstances of the crossing were not the same as at the time of the collision more than six years earlier. In particular, there was different signage and a different guardrail on the approach to the crossing and, unlike at the time of the collision, there was snow at the crossing. Defendant argued that the then-current condition of the site would not provide the jurors with a fair and accurate representation of what the crossing looked like at the time of the collision. The court noted that it was a different season in terms of foliage and visibility. Plaintiff agreed that there was different signage but argued that the vegetation and rock outcropping were pretty much the same. After this argument, the court decided not to order a site visit, reasoning that because the crossing was not in the same condition as it was at the time of the accident, a site visit would not be helpful to the jury in sorting out what happened on the day of the accident.

¶ 25. Plaintiff argues on appeal that a site visit was critical to help the jury understand how the collision occurred and why NECR was negligent in not providing more signage to warn motorists of the approaching danger. Plaintiff points to the testimony of witnesses who

10

described some of NECR's photographs of the crossing as inaccurate in terms of the view an approaching motorist would have had. Plaintiff contends that the weather conditions were not a substantial factor in the collision and thus should not have been a substantial factor in assessing the probative value of a site visit. As far as the change in signage, plaintiff asserts that the court could have addressed any changes to the site with instructions before and after the site visit.

¶ 26. We conclude that the trial court did not abuse its considerable discretion in declining to grant the juror's request for a site visit. See State v. McCarthy, 2012 VT 34, ¶ 14, 191 Vt. 498, 48 A.3d 616 (stating that "trial court has discretion in exercising its inherent power to allow or deny a request for a jury view" and that its evidentiary ruling will stand unless it totally withheld its discretion or exercised it on clearly untenable or unreasonable grounds (quotation omitted)). Upon learning of the juror's request, the court gave the parties a fair opportunity to make their arguments and then made a reasoned and reasonable decision that took into account the competing interests at stake. See id. ¶ 15 (concluding that trial court did not abuse its discretion in granting site visit because it "plainly weighed the competing interests" (quotation omitted)).

IV. Judgment as Matter of Law on Tree-Cutting Statute

¶ 27. At the time of the collision, 5 V.S.A. § 3673, then entitled "Cutting of trees," provided as follows: "A person or corporation operating a railroad in this State shall cause all trees, shrubs, and bushes to be destroyed at reasonable times within the surveyed boundaries of their lands, for a distance of 80 rods[6] in each direction from all public grade crossings."[7] The parties stipulated that since 1995 NECR has maintained and controlled a right of way at the Slaughterhouse Road crossing that "extends approximately fifty feet in each direction from the

---

[6] Eighty rods is a distance of approximately one-quarter mile.

[7] Section 3673, now entitled "Vegetation control," was completely rewritten in 2018. 2017, No. 158 (Adj. Sess.), § 14. It now provides as follows: "A railroad shall take reasonable measures to control vegetation that is both on railroad property and on or immediately adjacent to the roadbed, so that the vegetation does not obstruct a highway user's view of traffic control devices at a grade crossing or of a train approaching the crossing."

11

center line of the tracks." NECR presented testimony that it controlled vegetation growth at the crossing on an annual basis by chemically spraying an area extending ten feet from the center of the track and by brush-cutting an area generally extending anywhere from twenty-to-thirty feet from the track. NECR did not present any evidence, however, that it cut all shrubs, bushes, and trees to the full extent of its fifty-foot right of way at the crossing.

¶ 28. Following the close of evidence at trial, plaintiff moved for a "directed verdict" on "the vegetation violation of the Vermont statute," arguing that there was no evidence that NECR removed all trees and bushes within its fifty-foot right of way.[8] NECR responded that it took reasonable measures to control vegetation at the Slaughterhouse Road crossing and that plaintiff failed to present any evidence that any vegetation within NECR's right of way obstructed his view at the time of the accident. The court concluded that granting a motion for judgment as a matter of law contemplates directing a verdict on a claim or defense, but that this was "neither a claim or defense on which the Court could enter judgment" because plaintiff's motion was "really more in the nature of a request that the Court charge the jury that a certain issue has been established." The court stated that it would consider the motion in connection with the charge to the jury.

¶ 29. At the jury charge conference, plaintiff asked the trial court to remove from the proposed jury instructions a paragraph entitled, "VIOLATION OF A SAFETY STATUTE OR REGULATION," which allowed the jury, upon finding that a party had violated a safety statute or regulation, "to consider that as evidence that that party breached their duty of care, unless you conclude that violation of the regulation was justified or that the party exercised reasonable care despite violating the regulation." Plaintiff argued that the charge was redundant, given the court's similar instructions when discussing the duties of the railroad and motorists. He also argued that the last clause invited jury nullification. Plaintiff asked that if the court insisted on

---

[8] A motion for judgment as a matter of law is also sometimes referred to as a motion for a directed verdict.

12

keeping the instruction, it should identify specific safety statutes—in particular, the tree-cutting statute. The court noted that it was still considering plaintiff's motion for a directed verdict.

¶ 30. Per plaintiff's request, the trial court removed the particular instruction on violation of a safety statute. The court did instruct the jury, however, as follows, under the header, "Special Rules Applicable to Railroads":

> [T]he courts and the legislature have adopted or enacted certain rules of diligence that apply to this case. You may consider these rules as factors on the question of the negligence of [NECR].
>
> . . . .
>
> A company operating a railroad shall cause all trees, shrubs, and bushes to be destroyed at reasonable times within the surveyed boundaries of their lands (here, 50 feet from the center line of the track in both directions), for a distance of 1,320 feet, or 80 rods, in each direction from all public grade crossings.
>
> . . . .
>
> Those are the statutory and case law rules that have been established in addition to the reasonable care doctrine. If you find that [NECR] violated any of these rules, you may consider that fact in determining whether or not it was negligent.

¶ 31. In his closing argument, plaintiff argued that NECR's herbicide spraying program extended to only a ten-foot area, well short of what was required by state statute. After retiring to consider its verdict, the jury posed to the court the following question: "In regard to negligence, what if one party breaks the law but it does not create an unreasonable risk of harm? Is this negligence?" Plaintiff approved, but NECR objected to, the court's response to the jury. The court reminded the jury of its instruction that conduct is negligent only if it creates an unreasonable risk of harm. The court stated that that instruction appeared to answer the jury's question, but that the jury "should read and apply the law of negligence as I've given it to you as a whole."

¶ 32. On appeal, plaintiff challenges the trial court's failure to grant "plaintiff's motion for directed verdict on liability based on the uncontroverted evidence NECR failed to comply

13

with a safety statute." Plaintiff's argument misapprehends either the relationship between the violation of a safety statute and liability for negligence, or the availability of judgment as a matter of law pursuant to Vermont Rule of Civil Procedure 50(a).[9]

¶ 33. As to the first point, an established violation of a safety statute does not conclusively establish a defendant's <u>liability for negligence</u> for at least two reasons. For one, we have held with respect to certain kinds of safety statutes that "[p]roof of violation of a safety statute or regulation creates a prima facie case of negligence," not negligence per se. <u>Dalmer v. State</u>, 174 Vt. 157, 164, 811 A.2d 1214, 1221 (2002). Essentially, a violation of a safety statute creates a rebuttable presumption of a breach of the applicable standard of care, the "main effect" of which would be "a charge to the jury, if that had occurred." <u>Id</u>. at 166, 811 A.2d at 1223; see <u>Bacon v. Lascelles</u>, 165 Vt. 214, 222, 678 A.2d 902, 907 (1996) ("A prima facie case raises a rebuttable presumption of negligence and shifts the burden of production to the party against whom the presumption operates."). When a party produces evidence tending to show that the real fact is not as rebuttably presumed, the presumption disappears. <u>Bacon</u>, 165 Vt. at 222, 678 A.2d at 907. Thus, we have held that even in the face of an established safety code violation, evidence that a defendant acted as a reasonably prudent landlord under the circumstances is relevant to rebut the presumption of negligence arising from the safety code violation. <u>Id</u>. at 223. In this case, the jury could have concluded that any presumption that NECR breached the standard of due care arising from the requirements of the tree-cutting statute was overcome by evidence that, notwithstanding this violation, NECR's conduct was consistent with the requirements of reasonable care.

¶ 34. Moreover, a facial claim of negligence also requires injury and causation, and neither of these elements is established by proof of a violation of a safety statute, even if the defendant presents no evidence supporting the reasonableness of its actions. <u>Ante</u>, ¶ 15. We

_____

[9] We assume without deciding that plaintiff conclusively established that NECR failed to fully comply with the safety statute.

14

have accordingly acknowledged that the rule "treats violations of safety statutes and regulations as evidence of negligence [and] puts the safety statute or regulation before the jury whenever it could find the statute or regulation has been violated <u>and the violation could be found to be a proximate cause of the harm</u>." <u>Marzec-Gerrior v. D.C.P. Indus., Inc.</u>, 164 Vt. 569, 575, 674 A.2d 1248, 1252 (1995) (Dooley, J., concurring) (emphasis added); see also <u>Collins</u>, 2007 VT 92, ¶¶ 7-9 (acknowledging that defendant violated statute, and thus breached duty of care, by driving truck without valid inspection sticker, but concluding that violation of statute was not negligence per se and, as matter of law, was not proximate cause of plaintiff's injuries). For both these reasons, even assuming plaintiff conclusively established that NECR violated the tree-cutting statute, that would not establish NECR's liability to plaintiff for negligence, and plaintiff would not be entitled to judgment as a matter of law on his negligence claim.[10]

¶ 35.   If, instead, plaintiff urges that he was entitled to a "directed verdict" as to defendant's <u>violation of the safety statute</u>, rather than as to defendant's <u>liability for negligence</u>, then he misapplies our rules concerning judgments as a matter of law. If there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue, the trial court "may grant a motion for judgment as a matter of law against that party <u>with respect to a claim or defense</u> that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." V.R.C.P. 50(a)(1) (emphasis added). "We will uphold the trial court's denial of a motion for judgment as a matter of law if any evidence [viewed most favorably to the nonmoving party] fairly or reasonably supports a lawful theory of the nonmoving party." <u>Northshire Commc'ns, Inc. v. AIU Ins. Co.</u>, 174 Vt. 295, 298-99, 811 A.2d 216, 220 (2002).

---

[10]   Plaintiff relies upon the following statement in <u>Brown v. Roadway Exp., Inc.</u>: "If that party [with the burden of production] fails to offer evidence to show that the violation of the statute was justified or that the party exercised due care despite the violation of the statute, the court must direct the jury to find the existence of the presumed fact, that is, the negligence of the defendant." 169 Vt. 633, 634, 740 A.2d 352, 354 (1999) (mem.). In that case, however, there was no question that the violation of the statute caused the accident.

15

¶ 36.    As the trial court recognized, plaintiff's motion was not directed at a claim or defense on which he would be entitled to judgment, but rather it concerned a factor relevant to one element of one of plaintiff's theories of negligence—whether NECR breached its duty of care under the tree-cutting statute.  At most, plaintiff could seek an instruction to the jury to the effect that NECR's violation of the safety statute had been established, allowing the jury to then consider whether NECR had rebutted the presumption and whether plaintiff had established the other necessary elements of a negligence claim.  Plaintiff does not claim to have requested such a jury instruction, and does not argue on appeal that the trial court erred in failing to give such an instruction.

¶ 37.    For these reasons, plaintiff was not entitled to judgment as a matter of law due to NECR's alleged violation of the tree-cutting statute.

### V. Sudden Emergency Doctrine

¶ 38.    Finally, plaintiff argues that the trial court erred by denying his request for an instruction on the sudden emergency doctrine.  The sudden emergency doctrine "affords a plaintiff a degree of latitude in establishing that [the plaintiff's] own evasive conduct was reasonable." Rotman v. Progressive Ins. Co., 955 F. Supp. 2d 272, 289 (D. Vt. 2013).  Pursuant to the doctrine, a person "confronted with a sudden peril through no fault of [their] own . . . is not held to the exercise of the same degree of care as when [the person] has time for reflection, for the law recognizes that a prudent [person] so brought face to face with an unexpected change may fail to use the best judgment, may omit some precaution [they] may have taken or may not choose the best available method of meeting the dangers of the situation." Stevens v. Nurenburg, 117 Vt. 525, 533, 97 A.2d 250, 256 (1953).

¶ 39.    Plaintiff requested the following instruction:

> When a motorist is confronted with a sudden peril through no fault of his own he is not held to the exercise of the same degree of care as when he has time for reflection.  The law recognizes that a prudent motorist so brought face to face with an unexpected danger may fail to use the best judgment, may omit some precaution he

16

> could have taken or may not choose the best available method of
> meeting the dangers of the situation. Under the circumstances he
> is not negligent if he does what a prudent motorist would or might
> have done.

NECR objected to the proposed instruction, arguing that there was no unexpected danger, given the parties' stipulated fact that the crossbuck sign was visible to motorists exiting the bridge and heading up the hill to the railroad track. Plaintiff responded that the unexpected danger was that "up until that last moment, you don't know there's a train right there as opposed to the [mere] possibility of a train being there." The trial court did not include the requested instruction in its charge to the jury, and plaintiff challenges that ruling on appeal.

¶ 40. "A party who claims error in the jury charge has the burden of establishing both that the charge was wrong and that prejudice resulted from that error." Record v. Kempe, 2007 VT 39, ¶ 14, 182 Vt. 17, 928 A.2d 1199. We need not consider the merits of plaintiff's argument because, on its verdict form, the jury indicated that NECR was not negligent, and thus it did not reach the question of whether plaintiff was negligent or, if so, the degree to which he was negligent. As indicated above, plaintiff sought an instruction on the sudden emergency doctrine in the context of his contention that his culpability—in other words, comparative negligence—for the collision should be reduced or eliminated due to the sudden emergency of the approaching train. Because the jury did not reach the question of plaintiff's comparative negligence, plaintiff cannot show prejudice resulting from omission of the instruction, even assuming that it should have been given.

Affirmed.

FOR THE COURT:

_____

Associate Justice

17